THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HANCHETT PAPER COMPANY<br>(d/b/a SHORR PACKAGING CORP.), | )<br>)<br>) | |
| *Plaintiff*, | )<br>) | No. 23 C 1591 |
| v. | )<br>)<br>) | Judge Virginia M. Kendall |
| OFFICE DEPOT, LLC, | )<br>)<br>) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION & ORDER**

Hanchett Paper Company, doing business as Shorr Packaging Corp. ("Shorr"), provides packaging products and services to customers like Office Depot, LLC. (Dkt. 1 ¶ 6). The two companies have worked together successfully in the past, (*id.* ¶ 9), but their relationship has since soured. Shorr alleges that Office Depot contracted to purchase corrugated cartons and packaging equipment on behalf of Vans, an Office Depot customer. (*Id.* ¶¶ 7–8, 11–12). Although Shorr bought products from its supplier to perform the alleged contract, Office Depot never purchased them. (*Id.* ¶¶ 17, 22). Shorr sued Office Depot for breach of contract and promissory estoppel in the alternative. (*Id.* at 5–6). Office Depot moves to dismiss for lack of personal jurisdiction and improper venue, or for transfer to the Southern District of Florida. (Dkt. 12). For the following reasons, Office Depot's motion to dismiss for lack of personal jurisdiction is granted. (Dkt. 12).

1

**BACKGROUND**

Shorr is an Illinois corporation with its principal place of business in Aurora, Illinois. (Dkt. 1 ¶ 1). It distributes packaging products, equipment, and services to its customers. (*Id.* ¶¶ 1, 6). Office Depot is a Delaware limited liability company headquartered in Boca Raton, Florida.[1] (*Id.* ¶ 2). Office Depot provides consumer and business products and services. (Dkt. 12 at 2).

In November of 2020, Office Depot asked Shorr for a price quotation to purchase corrugated cartons and packaging equipment on behalf of Vans, an Office Depot customer. (Dkt. 1 ¶¶ 7–9). Between November 2020 and August 2021, Shorr provided three price quotations. (*Id.* ¶¶ 10–11). After receiving the third quotation, Office Depot orally agreed to the quoted prices and told Shorr that it was being awarded the Vans business. (*Id.* ¶ 11). Office Depot employee Ken Marciano confirmed the same by email. (*Id.* ¶ 12). Anticipating an order, Shorr purchased $369,775 worth of products from its suppliers. (*Id.* ¶ 14). But Office Depot never placed an order. (Dkt. 1 ¶ 17).

Office Depot's representative, Ken Marciano, worked from Texas. (Dkt. 12-1 ¶¶ 2–5). Marciano "performed no acts related to these discussions in Illinois." (*Id.* ¶ 11). He discussed the disputed transaction with Shorr employees George Patitsas and David Bowen, neither of whom resided or worked in Illinois during the negotiations.[2] (*Id.* ¶¶ 6–9). Anticipating Office Depot's

---

[1] The sole member of Office Depot, LLC, is the ODP Corporation. (Dkt. 1 ¶¶ 2–3). The ODP Corporation is incorporated under Delaware law and headquartered in Boca Raton, Florida. (Dkt. 17-2 at 1). For diversity purposes, an LLC takes the citizenship of each of its members, *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007), so Office Depot, LLC, is a citizen of Delaware and Florida. The parties are completely diverse, and Shorr has alleged the jurisdictional amount in controversy, so this Court has subject-matter jurisdiction over this breach-of-contract action. 28 U.S.C. § 1332.

[2] "On information and belief, George Patitsas did not reside or work in Illinois, but instead in Baltimore, Maryland." (Dkt. 12-1 ¶ 7). Although neither the Complaint nor any affidavit states where David Bowen resided or worked, "[o]n information and belief, at the time of such discussions, David Bowen did not reside or work in Illinois." (*Id.* ¶ 9). Shorr's email communications attached to the Complaint provide an address in Ohio for Bowen, suggesting he worked from there. (*See* Dkt. 1-2). Shorr neither disputes these facts nor offers affirmative evidence of where Patitsas or Bowen worked or negotiated from. Shorr identifies Marciano, Patitsas, and Bowen as the only individuals involved in the negotiations or copied on emails attached to the Complaint. (Dkt. 1 ¶¶ 12, 18–19, 21; Dkt. 1-1; Dkt. 1-2).

order, Shorr had the corrugated cartons shipped to and stored in five of its warehouses, located in Aurora, Illinois; Ontario, Canada; Fort Worth, Texas; Atlanta, Georgia; and Lemoyne, Pennsylvania. (Dkt. 1-1 at 5; Dkt. 17-3 ¶ 4). The products that were shipped to Shorr's Illinois warehouse were both manufactured by and shipped from a Shorr supplier in Sycamore, Illinois. (Dkt. 17-3 ¶ 4).

Shorr sued Office Depot for breach of contract and promissory estoppel in the alternative. (Dkt. 1 at 5–6). Office Depot moves to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, a transfer to the Southern District of Florida. (Dkt. 12). Shorr argues that this Court has personal jurisdiction and opposes transfer but asks the Court, if necessary, to grant jurisdictional discovery into Office Depot's business activities in Illinois. (Dkt. 17 at 10).

## LEGAL STANDARD

On a Rule 12(b)(2) or 12(b)(3) motion to dismiss, the Court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)). The plaintiff bears the burden of establishing personal jurisdiction when challenged. *John Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018). When, as here, the defendant submits evidence opposing the court's exercise of personal jurisdiction, the plaintiff must respond with "affirmative evidence supporting the court's exercise of jurisdiction." *Matlin*, 921 F.3d at 705 (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). If no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdiction. *Id.* The Court "read[s] the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *Cent. States, Se.*

*& Sw. Areas Pension Fund v. Phencorp Reins. Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of Northern Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)).

## DISCUSSION

"[A] federal court sitting in Illinois may exercise jurisdiction over" a defendant as "authorized [] by Illinois law and by the United States Constitution." *Matlin*, 921 F.3d at 705 (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011)). Illinois's long-arm statute grants jurisdiction if the Illinois and United States Constitution's due-process requirements are met. *Matlin*, 921 F.3d at 705. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). To satisfy due process, Office Depot must have sufficient "minimum contacts" with Illinois "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted); *see also John Crane, Inc.*, 891 F.3d at 695.

Personal jurisdiction may be general or specific. Shorr argues that this Court has specific personal jurisdiction over Office Depot. (Dkt. 17 at 5). "For specific personal jurisdiction, 'the defendant['s] contacts with the forum state must directly relate to the challenged conduct or transaction.'" *Matlin*, 921 F.3d at 705 (quoting *Tamburo*, 601 F.3d at 702). Specific, or "case-linked," jurisdiction exists when three requirements are met:

> [F]irst, defendants must have purposefully directed their activities at the forum state or purposefully availed themselves of the privilege of conducting business in the forum; second, the alleged injury must arise out of or relate to the defendants' forum-related activities; and third, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Sheehan v. Breccia Unlimited Co.*, 48 F.4th 513, 522 (7th Cir. 2022). The purposeful-direction or purposeful-availment prong of the analysis "must focus on the acts and activities of the defendant."

4

*Id.* at 522 (citing *Walden*, 571 U.S. at 284). "The relationship between the defendant and the forum 'must arise out of contacts that the "defendant *himself*" creates with the forum State.'" *Id.* (quoting *Walden*, 571 U.S. at 284 (emphasis in original)); *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." (emphasis in original) (internal citations omitted)).

As such, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Sheehan*, 48 F.4th at 522 (quoting *Walden*, 571 U.S. at 285). "[A] contract between a state resident and an out-of-state defendant alone does not automatically establish sufficient minimum contacts." *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). In contract cases, courts "consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts" with the forum state. *Id.* at 761 (quoting *Burger King*, 471 U.S. at 479). Further, the defendant's random, fortuitous, or attenuated contacts with the forum state do not satisfy due process. *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

Here, Office Depot did not purposefully avail itself of the privilege of conducting business in Illinois, nor did it purposefully direct its activities toward Illinois, with respect to this contract. *See Sheehan*, 28 F.4th at 522–23; *Tamburo*, 601 F.3d at 702. First, although Shorr is an Illinois

5

company, Office Depot did not negotiate the contract with anyone in Illinois. A commercial actor can establish minimum contacts by purposefully directing communications toward residents of the forum state, obviating the need for physical presence there. *See Burger King*, 471 U.S. at 476. But here, Office Depot was neither present in the forum state, nor ever directed any business communications toward Illinois residents. It initiated discussions with employees of a company based in Illinois, but none of those employees involved in this transaction worked there. *Cf. Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (observing that "pinning down which party initiated the transaction [with resident plaintiff] is merely one helpful factor in the jurisdictional equation" but that the minimum-contacts analysis focuses on whether nonresident defendant "intentionally served" the forum state's market). None of the relevant contract negotiations took place in Illinois, nor were they directed toward anyone in Illinois.

Second, the contract did not contemplate performance in Illinois. Nothing in either the Complaint or the affidavits establishes that the contractual obligations were to be performed in Illinois.[3] The contract (had it been carried out) envisioned Shorr providing corrugated cartons and packaging equipment to Vans on behalf of Office Depot after receiving a purchase order from the latter company. (*See* dkt. 1 ¶¶ 7–9; dkt. 1-1 at 9). Shorr independently chose to store some of its products in Illinois, among other locations, expecting to supply them to Office Depot after receiving an order. Similarly, Shorr independently selected its own supplier from Illinois. Office Depot contracted with Shorr to supply it with products for Vans, not to stock and store those products in an Illinois warehouse. These Illinois-based activities were not part of the contract. Office Depot, therefore, did not purposefully availed itself of the privilege of doing business in

---

[3] The record does not show where the corrugated cartons and packaging equipment would have been shipped under the contract—to Vans stores directly or to Office Depot warehouses first—but at any rate, Shorr has not alleged that Office Depot intended these products to be shipped from or to Illinois markets.

6

Illinois merely because Shorr created its own contacts within the forum state in anticipation of eventually fulfilling its contractual obligations. *See Sheehan*, 48 F.4th at 523; *Walden*, 571 U.S. at 285; *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

Shorr emphasizes that Office Depot conducts a significant amount of other business in Illinois to argue that Office Depot has established sufficient minimum contacts for this Court's exercise of personal jurisdiction over it. (Dkt. 17 at 1–2, 5–9; Dkt. 17-1; Dkt. 17-2). This argument misses the mark. Office Depot's general operations in Illinois do not apply to the specific personal jurisdiction analysis; only its suit-related contacts matter. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) ("A corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" (quoting *Int'l Shoe*, 326 U.S. at 318)). Shorr claims that Office Depot breached a specific contract, so Office Depot's other business dealings in Illinois are irrelevant. So, too, is an entirely separate contract between Office Depot and Shorr that requires shipping product to an Office Depot distribution center in Illinois and remitting payment to a P.O. Box in Chicago. (Dkt. 17-3 ¶ 6). Office Depot's other business in Illinois does not matter, only its contacts with Illinois vis-à-vis the contract at issue in this lawsuit.

Finally, Shorr points out that "[a]s part of the contracting process," Office Depot attempted—but failed—to set itself up in Shorr's electronic data interchange ("EDI") system. (Dkt. 17 at 7; Dkt. 17-3 ¶ 3). This required communicating with employees at Shorr's office in Illinois, which Office Depot did multiple times. (Dkt. 17-3 ¶ 3). But such communications with unspecified Shorr employees in Illinois about its EDI system are not central to the contract or the claims here.

7

Those employees did not discuss or negotiate the contract. They made no promises to Shorr about purchase orders. Neither Office Depot's nor Shorr's performance of their respective contractual obligations involved these communications. They had nothing to do with Office Depot's breach. Such contacts, therefore, are too random and attenuated to serve as the basis for this Court's exercise of personal jurisdiction. *See Walden*, 571 U.S. at 286; *Burger King*, 471 U.S. at 475.

Jurisdictional discovery is unnecessary here. To be entitled to jurisdictional discovery, Shorr must first make a colorable showing of personal jurisdiction. *Sheehan*, 48 F.4th at 526. When "the factual record is ambiguous or unclear on the issue," courts generally grant jurisdictional discovery. *See, e.g.*, *Medline Indus., Inc. v. Diversey, Inc.*, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020); *Marks v. Worldwide Robotic Automated Parking, LLC*, 2017 WL 2985757, at *3 (N.D. Ill. July 13, 2017); *Gilman Opco LLC v. Lanman Oil Co., Inc.*, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014). But when the record is clear, jurisdictional discovery is unnecessary. *Medline Indus.*, 2020 WL 5763637, at *4, *Marks*, 2017 WL 2985757, at *3; *Gilman Opco*, 2014 WL 1284499, at *6. Shorr offers no evidence that contradicts Office Depot's account of its suit-related contacts. Shorr asks for the opportunity to conduct jurisdictional discovery into Office Depot's other business activities in Illinois. (Dkt. 17 at 10). But these are irrelevant to the contract at issue here. Accordingly, the Court denies Shorr's request to conduct jurisdictional discovery. (Dkt. 17 at 10).

## CONCLUSION

For these reasons, the Court grants Office Depot's motion to dismiss for lack of personal jurisdiction and dismisses the Complaint without prejudice. [12] Office Depot's motions to dismiss for improper venue and for transfer in the alternative are dismissed as moot. The Court denies Shorr's request for jurisdictional discovery. [17] If Plaintiff believes that he can file an amended complaint that comports with this opinion he may do so on or before 9/5/23. If no amended complaint is filed by that date, this order shall become final.

                                                                                             Virginia M. Kendall
                                                                                             United States District Judge

Date: August 22, 2023